UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
DIVISION

ROBERT SCOTT URE, JR.,

    Plaintiff,

v.                                                     Case No. 2:22-cv-241-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for supplemental security income benefits (SSI). Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by improperly relying on the opinion of a lay State Agency Single Decision Maker ("SDM"); improperly evaluating Plaintiff's inability to interact with others; according "little weight" to the opinions of Plaintiff's longtime treating psychiatrist; and according "little weight" to the lay testimony of Plaintiff's girlfriend. As the ALJ's decision was not based on substantial evidence, the Commissioner's decision is remanded.

    I.     *Background*

Plaintiff, who was born in 1984, claimed disability beginning November 1, 2007, but amended his onset date to January 28, 2015 (Tr. 103, 116, 600). He was 30 years old on the amended onset date (Tr. 103). Plaintiff has a ninth-grade education (Tr. 78). He testified at his first administrative hearing that he was in special education

classes and left high school in the middle of tenth grade (Tr. 598). Although his prior jobs are not "past relevant work," he has worked as a deli clerk, dish washer, line worker, and selector (Tr. 110, 126, 601). Plaintiff alleged disability due to general anxiety disorder, social phobia, mood disorder, and heavy head trauma (Tr. 104).[1]

      Plaintiff testified at his 2017 hearing that he had not left his home by himself since 2007 (Tr. 615). He explained that he is "confined to his home" due to his agoraphobia and anxiety (Tr. 597). Although he is a licensed driver, he had not driven in over three years (Tr. 597). Similarly, at his 2021 hearing, he explained he fears leaving his home, and spends his days lying in bed or pacing from room to room in his house while his girlfriend is at work and his daughter is at school (Tr. 292-293). He testified that without someone with him, he feels uncomfortable (as if he is being watched); he sees demons in people; his anxiety flares; he begins to shut down; and he feel unsafe (Tr. 295). At his past jobs, Plaintiff worked alongside either his mother, his best friend, or another relative (not alone) (Tr. 622). Plaintiff testified he has difficulty concentrating and difficultly understanding and remembering what he reads (Tr. 609). Some days he remains in bed and does not shower or bathe (Tr. 611).

---

[1] Plaintiff reports falling from a three-story height at the age of five that resulted in a "mini coma" and a month-long hospitalization (Tr. 104). While the administrative record references this incident (Tr. 304), there are no medical records from the accident or related treatment. Prior to filing the instant disability application, Plaintiff sought disability benefits and was denied benefits twice before. Like the current application, those applications also contained no medical evidence supporting the alleged fall or traumatic brain injury (Tr. 106).

Plaintiff lives with his longtime girlfriend, Stephanie Walker, and their thirteen-year-old daughter (Tr. 80, 616).

Given his alleged disability, Plaintiff filed an application for SSI (Tr. 248-256). The Social Security Administration (SSA) denied Plaintiff's claim both initially and upon reconsideration (Tr. 134-138). Plaintiff then requested an administrative hearing (Tr. 244-247). Per Plaintiff's request, the ALJ held a hearing on October 23, 2017, at which Plaintiff appeared and testified (Tr. 589-636). On November 24, 2017, the ALJ issued a decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 113-130). Upon request, the Appeals Council reviewed the ALJ's decision and issued an Order vacating the ALJ's decision and remanding the case for further proceedings before a new ALJ (Tr. 132).

Thereafter, Plaintiff appeared before a new ALJ on February 2, 2021, for a telephonic hearing due to the COVID-19 national health emergency (Tr. 69-102). The ALJ issued a decision on March 3, 2021 (Tr. 10-29). In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 28, 2015, the amended onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments through the date last insured: generalized anxiety disorder; social phobia; social anxiety disorder; anxiety; depression; antisocial personality disorder; polysubstance dependence, in remission (PCP, cocaine, ecstasy, and LSD), cannabis abuse; and headaches/chronic post traumatic head headaches, not intractable (Tr. 12). Notwithstanding the noted severe impairments, the ALJ

determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:

> … claimant is limited to occasional exposure to atmospheric conditions, extreme cold, heat, wetness, and humidity. The claimant is limited to understanding, remembering, or applying simple instructions; occasional interaction with supervisors, coworkers, and the public; performing detailed, but uninvolved instructions, generally described as simple routine unskilled work, but not at a production rate pace, such as assembly line work; and simple work related decisions with occasional changes in the work setting.

(Tr. 17). In formulating Plaintiff's RFC, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p (Tr. 17).

The ALJ opined that transferability of job skills was not an issue because Plaintiff does not have any past relevant work (Tr. 23). Given Plaintiff's background, and RFC, the vocational expert (VE) testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as the jobs of packer (DOT Code 920.687-134, medium exertion, with approximately 40,000 jobs available in the national economy), counter supply worker (DOT Code 319.687-010, medium exertion, with approximately 35,000 jobs available in the national economy), cleaner (DOT Code 323.687-014, light exertion, with approximately 100,000 jobs available in the national economy), router (DOT Code 222.587-038, light exertion, with

approximately 38,000 jobs available in the national economy), and marker (DOT Code 209.587-034, light exertion, with approximately 30,000 jobs available in the national economy) (Tr. 24). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

  II. *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in

sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(i)-(iv). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the

evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III. Discussion

Plaintiff argues that the ALJ erred by improperly relying on the opinion of a SDM; improperly evaluating Plaintiff's ability to interact with others; according "little weight" to the opinions of Plaintiff's longtime treating psychiatrist; and according "little weight" to the lay testimony of Plaintiff's girlfriend. For the reasons set forth below, remand is required.

#### A. Ability to interact with others

Plaintiff asserts that the ALJ erred by concluding, at step three, that he has only moderate limitations in interacting with others and by concluding, at step four, that he has the residual functional capacity ("RFC") to occasionally interact with supervisors, coworkers, and the public.[2] The domain of interacting with others refers to:

---

[2] At step three of the sequential evaluation process, the ALJ rates Plaintiff's limitations in four broad areas of mental functioning (1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating,

7

> the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing") § 12.00(E)(2). Plaintiff complains that although the ALJ acknowledged that Plaintiff "does not leave his residence without his girlfriend's accompaniment," the ALJ still found him only *moderately* limited in interacting with others and capable of performing medium work requiring "occasional interaction with supervisors, coworkers, and the public." (Tr. 14-15, 17).[3] Plaintiff asserts that if the ALJ had properly credited the evidence of record documenting that he never ventures out alone without his girlfriend accompanying him, the vocational expert's testimony confirms that this limitation would amount to a marked impairment, precluding all work. (Tr. 100).

In concluding that Plaintiff is moderately limited in interacting with others, the ALJ explained:

> The claimant reported that he does not leave his residence without his girlfriend's accompaniment (4E and Testimony). However, the record also reflects that the claimant was able to ride in a car when he moved from Pennsylvania to Florida for a brief period to live with his mother, during the period at issue (Testimony). The claimant reported difficulties getting along

---

persisting, or maintaining pace; and 4) adapting or managing oneself) known as the paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.00A2b, 12.00E.

[3] According to the SSA, a "moderate impairment" means: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. pt. 404, subpt. P, App. 1, §12.00(F)(2). In comparison, a "marked impairment" means your functioning is "seriously limited." *Id.*

8

> with others and that he does not have a social life because he thinks people are always lying to him (4E). He further reported that his paranoid minds tells him their thoughts and that everybody talks about him and that he sees demons in people in public (4E). He reported that he shows respect to authority figures when he is respected in return and there are 'good vibes,' otherwise he experiences mood swings and flashbacks of 'extreme troubles in childhood' (4E). However, he also reported that he has never been fired from a job for difficulties involving his ability to get along with others (4E). At the consultative examination, the claimant reported that he socializes with his girlfriend and his daughter, and that he has one friend with whom he interacts (1F). Mental status examinations generally describe normal speech, cooperative demeanor, and appropriate eye contact (1F, 4F, 6F, 7F, 8F, 10F, 12F). While the record reflects reports of hallucinations, delusions, or paranoia on a few occasions, the record has been devoid of reported hallucinations, delusions, or paranoia since 2018 and the record is consistently devoid of reported homicidal ideations (1F, 4F, 6F, 7F, 8F, 12F). While the claimant's treating psychiatrist opined that the claimant has marked limitation in working in coordination with or proximity to others without being unduly distracted and accept [sic] instructions and respond appropriately to criticism from supervisors (5F, 13F). However, she further opined that the claimant has only moderate limitation in interacting appropriately with the general public, maintaining socially appropriate behavior, and getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes (5F, 13F). Additionally, and contrary to the treating psychiatrist, no reviewing or examining source opined that the claimant has greater than moderate limitation in this functional domain (1A, 1F). Thus, the evidence of record wholly supports the finding that the claimant's mental impairments cause moderate limitation in interacting with others.

(Tr. 14-15). Similarly, in reaching his RFC that limited Plaintiff to occasional interaction, the ALJ contrasted Plaintiff's reports of never leaving home with "mental status examinations [that] fail to show significant clinical abnormalities and … relatively routine and conservative mental health treatment, consisting of outpatient therapy and medication management …" (Tr. 19). The ALJ discussed that psychological consultant Angela Chiodo, Psy.D. noted: The claimant initially presented as very tense and reserved. He would only speak when addressed, but as

the evaluation continued the claimant was unable to maintain the façade, and his physical appearance became more relaxed, and he responded spontaneously. The claimant appeared to be attempting to present much more poorly (Tr. 20, 361). Ultimately, Dr. Chiodo assessed intact attention and concentration, neutral mood, clear sensorium, intact recent and remote memory, average intellectual functioning, limited insight, and fair judgment (Tr. 363). As a result, Dr. Chiodo opined Plaintiff has only mild limitations in interacting with co-workers and supervisors (Tr. 367).

    Against this backdrop, I am tasked with reviewing the ALJ's decision to determine whether it is "supported by substantial evidence and based on proper legal standards." *Winschel, supra,* 631 F.3d at 1178. The ALJ has the duty to "scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "An ALJ fails to satisfy this duty not only when he fails to elicit facts relevant to the applicant's claim at the hearing, but also when his decision omits key information." *Id*. The administrative record reveals that Dr. Turnberg, Plaintiff's treating psychiatrist, first evaluated him on May 26, 2009, over five years before the alleged onset date (Tr. 380-382). At that time, Plaintiff complained of "bad anxiety; can't be around people … my thoughts are constantly running, can't sleep since about 9 yrs old, bad at about 15-16 yrs." (Tr. 380). Dr. Turnberg diagnosed Generalized Anxiety Disorder (GAD); depression; history of head trauma (Tr. 382). Dr. Turnberg again assessed Plaintiff on September 16, 2015 (Tr. 424-432). The assessment lists Plaintiff's girlfriend, Stephanie Walker, as his "guardian" (Tr. 424). According to Dr. Turnberg's assessment, Plaintiff had been

sober for seven years; was molested as a child; experienced bullying and was shunned by his peers at school; was kicked out of several schools because of how he dressed and the music he listened to; had a history of violent issues; and was incarcerated for fracturing someone's skull (Tr. 425-426).

When asked whether he would like to work, Plaintiff responded, "If I am able to work by myself, but I cannot handle working in public or with other people" (Tr. 427). When asked about barriers to mental health treatment, Plaintiff answered that "coming is an issue and my anxiety and panic can overcome me when I do not feel like coming. In the past there were so many people I was seeing and it made it difficult for me to get treatment" (Tr. 429). When asked about personal changes he would like in his life, Plaintiff responded, "I just want a normal day and be at ease and peace. I'm tired of not being able to get out of my head. There's no escaping my thoughts. My anxiety is getting the best of me. I can't even go to the park with my daughter or to the grocery store because of all the eyes looking at me. I try to bit [sic] my tongue but sometimes I can't" (Tr. 429). Dr. Turnberg's assessment indicates that Plaintiff/family report a risk of suicide, assaultive behavior, and destructive behavior (Tr. 428). Dr. Turnberg assessed Plaintiff's thought content as "paranoid, delusional;" she diagnosed social phobia and personality disorder unspecified (Tr. 431-432).

Plaintiff treated regularly with Dr. Turnberg from that assessment through the date of his application for benefits. Records from December 2015 and February 2017 indicate Plaintiff was delusional (Tr. 412, 417). Plaintiff's therapist, Sabrina Pacifici (who worked alongside Dr. Turnberg) noted in treatment plan for January-May 2016

11

that Plaintiff's current symptoms were "anxiety/ panic attacks, paranoia" and that he had never had a symptom-free period of time (Tr. 376). In August 2017, Dr. Turnberg noted that Plaintiff "still stays at home" (Tr. 395). Similarly, in February 2018, Dr. Turnberg noted Plaintiff "feels a little better at times but this is not sustained" and "still does not go anywhere" (Tr. 440). She noted a "lack of progress," stating that he remains anxious and depressed (Tr. 442). Again, in May 2018, Dr. Turnberg indicated Plaintiff "reports things are the same. Stays at home. Goes only to necessary appointments" (Tr. 462). Although Dr. Turnberg assessed Plaintiff's thought process as logical and directed, she described his thought content as "delusions and paranoia" (Tr. 463). For diagnosis, she stated "[patient] remains [with] anxiety and social phobia" (Tr. 464). At a November 20, 2018 appointment, Dr. Turnberg, indicated Plaintiff had "some obsessions about the past" and "continues to have anger issues" (Tr. 580-581). She described his Social Anxiety Disorder as "active" and indicated he had an "established problem to examiner that is worsening" (Tr. 581-582). As a result, Dr. Turnberg changed Plaintiff's psychiatric medications, again noting a "lack of progress" (Tr. 581).

In January 2019, Dr. Turnberg noted Plaintiff's mood was anxious; while she indicated he was "doing well," she noted a "lack of progress" (Tr. 575). In March 2019, Dr. Turnberg indicated Plaintiff's thought content as "illusions" and noted he had suicidal ideations but no urges or plans (Tr. 570). In September 2019, Dr. Turnberg assessed Plaintiff's social anxiety, describing Plaintiff as "[m]edically stable, [g]ood with family, [s]till does not go anywhere" (Tr. 559). Dr. Turnberg's June 2020

telehealth note indicates Plaintiff moved to Florida one week ago and is looking for housing; and "has a chronic medical illness and needs ongoing support" (Tr. 554-555). In September 2020, Dr. Turnberg again noted Plaintiff "stays at home" (Tr. 548). Dr. Turnberg's October 2020 note states Plaintiff was stressed due to a move into a new home; Dr. Turnberg noted a "lack of progress" and that he suffers from a "chronic illness that needs ongoing care" (Tr. 543-544). Dr. Turnberg's telehealth note from December 2020 states Plaintiff's social anxiety disorder causes poor sleep; he paces and "does not go outside" (Tr. 538). Dr. Turnberg noted Plaintiff is medically stable but has "no contact with anyone other than mother;" she described Plaintiff's continued social anxiety disorder and generalized anxiety disorder as a "chronic illness that is stable" (Tr. 538-540).

Other record evidence confirms that Plaintiff does not leave his home alone and relies on the support of his girlfriend. A Social Security Disability Report indicates Plaintiff was "capable of answering the questions [but] preferred his girlfriend provide[] the information" (Tr. 272). The report indicates Plaintiff attended special education classes from 1997-1998 (Tr. 277). Similarly, a Function Report completed by Plaintiff's girlfriend describes Plaintiff's "fear of leaving my house" (Tr. 292). The report explains that during the day Plaintiff "lays in bed and pace[s] from room to room in the house alone dwelling in my thoughts with anxious thoughts. I'm afraid I'm being watched and don't know why" (Tr. 293). Plaintiff watches his daughter from the time she gets off the bus until his girlfriend gets home from work but does not

leave the home (Tr. 293). Plaintiff describes that he has dealt with "this illness since childhood, just has progressed to an extreme disfunctional [sic] level" (Tr. 293).

Evidence shows that Plaintiff performs very little in the way of personal care and household chores. He does not get dressed until it is time for his daughter to get off the bus; he bathes every couple of days; his girlfriend shaves his head every few weeks; he shaves when he can make himself get up and do it; he does not eat unless he has to when his family gets home; he uses the toilet on his own (Tr. 293). A few days a week, when he is more functional, he gets out of bed and prepares meals, but he finds it difficult to focus on cooking (Tr. 294). He tries to sweep or pick up around the house, but he finds himself walking around and then getting back in bed (Tr. 294). Because he is afraid to leave his home, he does not do any chores outside the home (Tr. 294). His girlfriend does all the shopping (Tr. 295). He feels like he is being watched and is uncomfortable when out in public without someone to help him talk to others (Tr. 295). Although he has a driver's license, his girlfriend drives as he "feel[s] anxious behind the wheel" (Tr. 295). Per his girlfriend's observation, Plaintiff "suffers from his anxiety so much" … he "struggles to even leave the home so therefore he can't feel safe leaving the house he can't get out in society to work effectively" (Tr. 309).

In sum, the record consistently shows that Plaintiff is home-bound due to severe anxiety and social phobia and does not venture out of his home without his girlfriend. At times he is delusional and has racing thoughts that prevent him from concentrating on tasks at hand. He feels that others are talking about him and has anger issues.

Treating psychiatrist Dr. Turnberg's records substantiate Plaintiff's claims that he does not leave his home, and confirm his reports of delusional or racing thoughts, social phobia, and generalized anxiety disorder. While the ALJ correctly notes that mental status exams oftentimes reveal normal thought processes, normal speech, intact memory skills, and a cooperative demeanor, the evidence still depicts that Plaintiff is seriously limited in his ability to interact with others "independently, appropriately, effectively, and on a sustained basis." *See* 20 C.F.R. pt. 404, subpt. P, App. 1, §12.00(F)(2). As discussed more fully below, "it is improper for an ALJ to dismiss a psychiatrist's treatment notes as 'indicating only mild limitations … at best' simply because 'some of [the claimant's] mental-status examination were better than others.'" *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1106 (11th Cir. 2021) (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019)).

Looking at the ALJ's decision and the reasons he gave to support his RFC analysis, I note that the ALJ found Plaintiff's ability to ride in a car when he moved from Pennsylvania to Florida cut against his assertion that he has at least marked limitations in interacting with others (Tr. 14). However, Plaintiff's girlfriend accompanied him in the car ride to Florida (and reportedly did *all* the driving), and the couple returned to Pennsylvania when Plaintiff's anxiety symptoms did not improve in Florida (Tr. 82). The ALJ also discounted Plaintiff's reports of difficulty getting along with others since he had "never been fired from a job for difficulties involving his ability to get along with others" (Tr. 15). When asked about his prior work, Plaintiff asserts that his jobs were with people he knew– framing houses with a group

of friends; at a pizzeria owned by his mom's boyfriend's mother; at a deli and at a laboratory with his mom; and at Versicle with his best friend Ronnie (Tr. 622).[4]

In concluding that the record evidence wholly supports a finding that Plaintiff's mental impairments cause only moderate limitations in interacting with others, the ALJ weighed in on the fact that Plaintiff "socializes with his girlfriend and his daughter, and that he has one friend with whom he interacts" (Tr. 15). While it is true that Plaintiff lives with his girlfriend and their daughter, the record hardly demonstrates he "socializes" (Tr. 15). Rather, Plaintiff's girlfriend testified at the most recent administrative hearing that Plaintiff does not get out of bed at least 20 out of 30 days a month; that he secludes himself from his daughter at times; and that he does not go outside the four walls of their home, "the deck is the limit … that is as far as he can go." (Tr. 623-625). Certainly, Plaintiff's ability to occasionally cook meals or to supervise his daughter in his home are hardly indicative of his ability to function in a demanding workplace. *See Schink*, 935 F.3d at 1266 ("Indeed, Social Security regulations acknowledge that the ability to complete tasks in settings that are less demanding than a typical work setting 'does not necessarily demonstrate [an applicant's] ability to complete tasks in the context of regular employment during a normal workday or work week. 20 C.F.R. pt. 404, subpt, P, app. 1, § 12.00(C)(6)(b).

---

[4] The Commissioner commented in the memorandum of law that it is unclear what evidence Plaintiff relied upon in explaining that his prior jobs were all with familiar co-workers (Doc. 29 at 10). On October 3, 2022, a supplemental administrative record was filed in the Court file (Doc. 25). This supplemental record contains the transcript from the ALJ hearing dated October 23, 2017, wherein Plaintiff testified about his prior jobs.

That is especially relevant where, as here, an applicant spends most of his time among familiar (or no) people and a steady environment, so his behavior does not necessarily show how he would function in a work setting on a sustained basis. *See id*. pt. 404, subpt. P, app. 1, § 12.00(D)(3)(b).'"). Furthermore, as Plaintiff notes, the ALJ's reliance on the facts that he has not experienced hallucinations, delusions, or paranoia (if true) and that he has no reports of homicidal ideations are not relevant to the domain of interacting with others.

Lastly, and most relevant, is the ALJ's characterization of Dr. Turnberg's opinion. In support of his conclusion that Plaintiff is only moderately limited in his ability to interact with others, the ALJ noted that while Dr. Turnberg opined Plaintiff had marked limitation in working with others without being unduly distracted and in his ability to accept instructions and respond appropriately to criticism from supervisors, she opined that Plaintiff had only moderate limitations in interacting appropriately with the general public, maintaining socially appropriate behavior, and getting along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes (Tr. 15). The areas Dr. Turnberg found Plaintiff markedly limited in pertain to his ability to be around others without himself being unduly distracted by them, while the areas Dr. Turnberg found Plaintiff only moderately limited in pertain to the impact of his own behavior on others around him (Doc. 28 at 20). Dr. Turnberg's extensive office notes consistently indicate Plaintiff did not leave his home and suffered from social phobia. Surely her voluminous handwritten notes are persuasive evidence of Plaintiff's marked limitations. Thus, I find that the ALJ did

not articulate substantial evidence supporting his finding that Plaintiff suffers only moderate limitations in interacting with others and is capable of occasional interaction with supervisors, coworkers, and the public. *See Schink*, 935 F.3d at 1266 (finding no support for ALJ's conclusion that plaintiff had only mild limitations in ability to interact independently, appropriately, and effectively on a sustained basis with other individuals where record showed plaintiff led an isolated life, rarely engaged in activities outside his home, had few or no friends, and spent most days watching television, playing on computer, and napping); *Sharpe v. Comm'r of Soc. Sec.*, 2022 WL 152229 (11th Cir. Jan. 18, 2022) (remanding where ALJ erred in concluding claimant, who rarely left his home due to anxiety and psychological impairments, could occasionally interact with coworkers and supervisors).

      In remanding this case, I point out that an ALJ must consider "the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of the workplace." *Simon,* 7 F.4th at 1107 (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)) ("for a person who suffers from an affective disorder or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic"); *Castro v. Comm'r of Soc. Sec.*, 783 F.App'x 948, 956 (11th Cir. 2019) ("Without more, we cannot say that [the treating physician's] observations of Castro's judgment, insight, thought process, and thought content in a treatment environment absent work stressors were inconsistent with his assessments about the limitations she would face in a day-to-day work environment"). Although *Simon* involved a claimant diagnosed with bipolar disorder,

18

Plaintiff's mental health diagnoses of anxiety and social phobia are chronic conditions too. Chronic mental disorders are characterized by "unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months." *Id*. (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). For those who suffer from chronic disorders, "'a snapshot of any single moment says little about [a person's] overall condition,' and an ALJ who relies on such snapshots to discredit the remainder of a psychiatrist's findings demonstrates a 'fundamental, but regrettably all-too-common, misunderstanding of mental illness.'" *Id*. (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)). Similarly, "activities– which do not require or even involve human interaction– do not establish that [a claimant] is able to function socially." *Schink,* 935 F.3d at 1266. Like the claimant in *Simon*, the Plaintiff's diagnosis caused him to experience more serious symptoms than those acknowledged by the ALJ.

B. Remaining Issues

Plaintiff's contention that the ALJ erred by failing to properly weigh Dr. Turnberg's opinions overlaps with his assertion, discussed above, that the ALJ erred in finding him only moderately limited in interacting with others. On remand, the ALJ should re-evaluate Dr. Turnberg's opinions.[5] Considering the remand, it is unnecessary to address the remaining issues (that the ALJ improperly relied on the

---

[5] The regulations applicable to Plaintiff's claim required the ALJ to accord controlling weight to a treating doctor's opinions if well-supported by medically accepted clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2).

opinion of the Single Decision Maker and improperly accorded "little weight" to Plaintiff's girlfriend's testimony).

IV.    *Conclusion*

It is ORDERED:

1. The ALJ's decision is REVERSED and REMANDED to the Commissioner for further administrative proceedings consistent with this Order; and

2. The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on June 5, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record